Filed 7/8/26  P. v. Gonzalez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E084252 |
| v. | (Super.Ct.No. FSB23003205) |
| MARK ANTHONY GONZALEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cheryl C. Kersey, Judge.  Affirmed.

Paul R. Kraus, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene Sevidal, Assistant Attorney General, Robin Urbanski and Anastasia Sagorsky, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Mark Anthony Gonzalez of going to meet a minor for lewd purposes.  (Pen. Code, § 288.4, subd. (b); unlabeled statutory citations refer to this code.)

1

Gonzalez argues that the trial court prejudicially erred under *Griffin v. California* (1965) 380 U.S. 609 (*Griffin*) when it responded to a jury question. Finding no error, we affirm.

BACKGROUND

In September 2023, a criminal investigation officer with the San Bernardino Police Department created a decoy account on Whisper, a social networking application. The decoy posed as a 14-year-old girl from San Bernardino. She posted about not having "'Saturday school,'" and a user later identified as Gonzalez responded and asked the decoy to "'hang out.'" Gonzalez and the decoy exchanged messages in which Gonzalez solicited the decoy's phone number, a description of her physical appearance, and her age. Gonzalez told the decoy that he was a 44-year-old man and that he had arranged prior in-person meetings through Whisper. He described the prior meetings as "'[r]eal chill. Usually talk, maybe get food, make out and sex if there's a connection.'" Gonzalez also said that age should not matter and that if they had a connection, then he would kiss her "'and go from there.'"

Gonzalez and the decoy later had an unrecorded phone conversation, and the decoy asked if he had "done it" with people who were the decoy's age (14 years old). Gonzalez replied that he had done so approximately 20 times and that his youngest partner was 13 years old. They returned to exchanging messages on Whisper and arranged to meet at a park. The decoy asked if Gonzalez was going to bring "protection," and she asked him to bring a particular snack chip and energy drink. Gonzalez was arrested soon after arriving at the park, where the decoy and a detective were waiting.

2

Law enforcement searched Gonzalez's car and found the snack chip and energy drink that the decoy had requested.

Gonzalez's trial took place in April and May 2024. During deliberations, the jury sent a note to the court asking, "Are there any statements made by the defendant that we can review?" The court sent a text message to defense counsel and the prosecutor notifying them of the jury's question. Defense counsel proposed that the court respond by saying, "'You have all the evidence that was presented.'"

The court instead responded to the jury by saying, "All exhibits permitted are admitted for your review." The court notified counsel of the response via text message, and defense counsel replied, "I object." The court later permitted defense counsel to make a record regarding his objection. Counsel argued that the court's response implied "that there was a statement that they weren't permitted to see." He further argued that the court should have directed the jurors to the instructions regarding Gonzalez's right not to testify (CALCRIM No. 355) and Gonzalez's out-of-court statements (CALCRIM No. 358).[1]

---

[1] The court instructed the jurors with CALCRIM No. 355 as follows: "A defendant has an absolute constitutional right not to testify. He or she may rely on the state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt. Do not consider, for any reason at all, the fact that the defendant did not testify. Do not discuss that fact during your deliberations or let it influence your decision in any way." The court also instructed the jurors with CALCRIM No. 358 as follows: "You have heard evidence that the defendant made oral or written statements before the trial. You must decide whether the defendant made any of these statements, in whole or in part. If you decide that the defendant made such statements, consider the statements, along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give to the statements. [¶] Consider with caution any statement made by

3

Shortly after the court responded to the jury question, the jurors found Gonzalez guilty of going to meet a minor for lewd purposes. (§ 288.4, subd. (b).) The court sentenced Gonzalez to the middle term of three years in state prison.

DISCUSSION

Gonzalez argues that the trial court committed prejudicial *Griffin* error when it responded to the jury's question. He contends that the court's response was reasonably likely to draw attention to his failure to testify or offer statements in his defense. The argument lacks merit.[2]

*Griffin* held that the Fifth Amendment right against self-incrimination "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." (*Griffin*, *supra*, 380 U.S. at p. 615.) The rule prohibits both direct and indirect comments on the defendant's failure to testify at trial. (*People v. Tom* (2014) 59 Cal.4th 1210, 1223; *People v. Medina* (1995) 11 Cal.4th 694, 755.) Although *Griffin* prohibits comments on the defendant's failure to testify, the rule permits comments on "the state of the evidence, or on the failure of the defense to introduce material evidence or to call logical witnesses." (*Medina*, at p. 755; *People v. Vargas* (1973) 9 Cal.3d 470, 475-476 ["It is now well established that although *Griffin* prohibits reference to a defendant's failure to take the stand in his own defense, that rule

_____

the defendant tending to show his guilt unless the statement was written or otherwise recorded."

[2]   The People argue that Gonzalez forfeited the argument by failing to make a specific *Griffin* objection in the trial court. Gonzalez asserts that any forfeiture was the result of defense counsel's ineffective assistance. Because we address the merits of the *Griffin* argument, we need not address Gonzalez's ineffective assistance claim.

4

'does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses'"].)

We review a claim of *Griffin* error independently. (*People v. Clair* (1992) 2 Cal.4th 629, 663.) In determining whether a particular remark constitutes *Griffin* error, "[w]e examine whether there is a reasonable likelihood that the jury would have understood the remark to be a comment on defendant's failure to testify." (*People v. Memro* (1995) 11 Cal.4th 786, 874; *Clair*, at p. 663.)

The court did not commit *Griffin* error when it replied to the jury's question. The court did not comment directly on Gonzalez's failure to testify, and there is no reasonable likelihood that the jurors understood the response to be a comment on that. The jurors were present for trial and were aware that Gonzalez did not testify. Their question could not reasonably be construed as asking whether there was any trial testimony by Gonzalez available for review, so the court's response directing them to the admitted exhibits could not reasonably be construed as a comment on the absence of his trial testimony. And even if the court's response implied that there was an out-of-court statement that the jurors were not permitted to review, there was no *Griffin* error. *Griffin* prohibits comments on the defendant's failure to testify at trial, not the defendant's failure to produce other evidence. (*People v. Medina*, *supra*, 11 Cal.4th at p. 755.)

The case on which Gonzalez primarily relies, *People v. Guzman* (2000) 80 Cal.App.4th 1282 (*Guzman*), does not compel a different conclusion. The prosecutor in *Guzman* repeatedly emphasized the victim's willingness to testify and characterized the victim as "'[r]esponsible,'" because he waited for police officers, told them what

5

happened, and testified in court. (*Id.* at p. 1286.)  In contrast, the prosecutor characterized the defendant's actions as "'[c]riminal'" because he fled the scene and lied to police. (*Ibid.*)  The *Guzman* court held that the prosecutor's "comparative paradigm" had "impliedly invited" the jury to consider the defendant's failure to testify in violation of *Griffin*. (*Guzman*, at p. 1288.)

The court's response to the jury question in the instant case was unlike the prosecutor's line of argument in *Guzman*.  The court did not emphasize anyone's willingness to testify and did nothing else that would "naturally and necessarily" draw the jury's attention to Gonzalez's failure to take the stand. (*Guzman*, *supra*, 80 Cal.App.4th at p. 1289.)

For these reasons, we conclude that the court did not commit *Griffin* error when it responded to the jury's question.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ_____
J.

We concur:

CODRINGTON_____
Acting P. J.

FIELDS_____
J.

6